Booth, Chief Justice,
delivered the opinion of the court:
The facts in this case are not in controversy. The parties have stipulated the same.
Plaintiff is a Pennsylvania corporation engaged in the manufacture of fabricated steel products. During the war, i.e., January 31, 1918, the plaintiff entered into a written contract to manufacture and deliver to the defendant 2,500,-'000 booster casings for shells for use in the Army’s 75 m/m guns. The plaintiff was to receive $0.0455 for each casing ■delivered, and the defendant was obligated to furnish without cost to the plaintiff all the steel necessary to manufacture the same.
The defendant furnished the plaintiff 851,560 pounds of steel, of which amount 467,500 pounds were actually consumed in making the casings and 382,500 pounds were dumped on plaintiff’s scrap pile, i.e., trimmings and cuttings resulting from the fabrication of the casings. The contract was completed on October 20,1918, and on that date plaintiff had in its possession 1,560 pounds of unused steel. It is conceded that on the date when the contract was completed the 382,500 pounds of so-called scrap steel had a market value of $22.35 per net ton, and that the 1,560 pounds of unused steel possessed a cost value of $77.22.
The War Department, through the Chief of Finance, demanded of plaintiff payment for the scrap and unused steel in the sum of $4,351.66, the plaintiff declined to pay the same, and the Chief of Finance then certified the claim to the General Accounting Office, where the claim was duly considered and account stated, and an indebtedness of $4,351.66 certified in favor of the defendant. The Comptroller General withheld from plaintiff from other sums due it $4,262.83 and applied the same on plaintiff’s claimed indebtedness of $4,351.66.
Plaintiff now sues to recover $4,351.66. The defendant not only contests the right of recovery, but in addition inter *199 poses a counterclaim for $88.83 alleged to be due under two ■ contracts executed by the parties in 1926, wherein the defendant was to be allowed a cash discount of one and five per •centum for prompt payment of sums due the plaintiff there- ■ under. The amounts and facts with respect to the above ¡are in nowise controverted by the parties.
Plaintiff’s case turns upon the issue as to whether under the contract involved the furnishing of steel by the defendant constituted a sale or bailment, plaintiff contending that ithe transaction was a sale and not a bailment. The fundamental legal question involved has long since been established. In the case of Powder Company v. Burkhardt, 97 U.S. 110, 116, the Supreme Court said:
“ The plaintiff in error contends that the present is the •case of a bailment and not a sale or a loan of the goods and money to Dittmar. It is contended that the question of bailment or not is determined by the fact whether the identical article delivered to the manufacturer is to be returned to the party making the advance. Thus, where logs are delivered to be sawed into boards, or leather to be made into shoes, rags into paper, olives into oil, grapes into wine, wheat into flour, if the product of the identical articles delivered is to be returned to the original owner in a new form, it is said to be a bailment, and the title never vests in the manufacturer. If, on the other hand, the manufacturer is not bound, to return the same wheat or flour or paper, but may deliver any other of equal value, it is said to be a sale or a loan, and the title to the thing delivered vests in the manufacturer. We understand this to be a correct exposition of the law. Pierce v. Schenck, 3 Hill (N.Y.), 28; Norton v. Woodruff, 2 N.Y. 153; Mallory v. Willis, 4 id, 76; Foster v. Pettibone, 7 id. 433.”
Other cases are cited in briefs of counsel but they disclose no deviation from this established rule. The perplexing problem is the application of the facts in unusual and border-line cases to the law. The deciding factor deducible from the cases is, we think, succinctly stated in the •above case, “if the product of the identical articles delivered is to be returned to the original owner in a new form, lit is said to be a bailment.”
*200 The second paragraph of article III of the contract reads as follows:
“ The United States agrees to furnish f.o.b. contractor’s plant without cost to the contractor the steel necessary for the manufacture of the articles, whenever the contractor shall call for same. It is agreed that material furnished by the United States shall be in accordance with the requirements under the specifications.”
Under this stipulation it is manifest, it seems to us, that the contractor was obligated to return the identical article in a new form. There is nothing in the record antagonistic to this conclusion, no proof that the contractor was to do more than fabricate the furnished steel into booster casings and return the same to the defendant.
Emphasis is laid upon the meaning of “ manufacture ”, “ furnish ”, “ advance ”, etc. However important resort to this source of information may be in certain cases, we think the issue here is to be determined by what all the provisions of the contract indicate to be the intention of the parties, and what the provisions of the same really accomplished in the way of mutual obligations.
The plaintiff was to receive a consideration of $0.0455 for each casing delivered. This is the one and only provision as to compensation, and it is of course apparent that it was predicated upon the fact that the raw material from which the casings were to be made was to be furnished by the Government, an expensive and costly article, at 'the time difficult to obtain, and a material which the record clearly shows was subject to large wastage in the way of cuttings and trimmings possessing a much reduced value when thus-accumulated. If the contract terms conveyed title of the furnished steel to the plaintiff the stated consideration it was to receive under the contract is increased, and 1,560 pounds of steel at no time used by the plaintiff in its manufacturing process becomes its property substantially as a gift.
Provisions of the contract concerning delays in delivery, default in performance, with the right of the defendant to recoup losses occasioned by the happening of the stated events, do not, we think, alter or change the relationship of *201 the parties with respect to the steel to be furnished by the defendant. Provisions of this character in Government contracts are usual, and their purpose obvious; they, like cancellation clauses, operate when the event occurs, and have reference to defaults and the exercise of granted privileges. Surely it may not be said that a failure to deliver the casings on time, or an absolute default in performance of the contract, precluded the defendant from asserting title to an article to be converted into casings which had not been so converted by the contractor but which had been delivered to it to so convert.
The defendant agreed to furnish the raw material in accord with the specifications of the contract calling for its manufacture into booster charge casings, a new form of article involving, so far as the record advises, no new or added elements, nothing more than an evolution of casings from the steel supplied for the purpose, and the transaction, in our opinion, was a bailment of the steel and not a sale.
We need not discuss the counterclaim. The findings correctly set forth the facts, and if we are correct as to what has been said above, judgment for the counterclaim follows as a matter of course. Judgment for the United States for $88.83. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and GREEN, Judge, concur.